UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JILL A. VOGEL,<br><br>             Plaintiff,<br><br>       v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>             Defendant. | No. ED CV 05-260-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on April 1, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed a Consent to proceed before the undersigned Magistrate Judge on April 29, 2005.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 17, 2006, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 6, 1958.  [Administrative Record ("AR") at 66.] She has a fourth grade education,[1] and past work experience in retail sales and as a food server.  [AR at 78, 83.]

On December 23, 2002, plaintiff filed an application for Supplemental Security Income payments, in which she alleged that she has been unable to work since December 2, 2002, due to hepatitis C, arthritis of the spine, heart valve infection, learning disability, right leg numbness, and bad eyes. [AR at 66-69, 77.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 14, 2004, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified.  [AR at 18-38.]  On February 19, 2004, the ALJ determined that plaintiff was not disabled because, absent a substance addiction disorder, she retains the ability to perform a wide range of light work activity.[2]  [AR at 11-16.] When the Appeals Council denied review on January 27, 2005, the ALJ's decision became final. [AR at 4-6.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1]   Plaintiff indicated at the hearing that she went through the seventh grade. [AR at 23, 30.]

[2]   Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 11.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "drug addiction disorder, depression, and anxiety." [AR at 12.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ further determined that plaintiff's drug abuse and dependence precludes the performance of work activities on a sustained basis at any level of exertion, but absent that disorder, she retains the residual functional capacity[3] to perform a wide range of light work with certain restrictions.[4] [AR at 12.] At step four, the ALJ determined that plaintiff has no past relevant work. [AR at 14.] At step five, the ALJ concluded that in the absence of her substance addiction, there are a significant number

---

[3]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[4]   Those restrictions include "the nonexertional physical limits of no work at unprotected heights or around dangerous machinery; postural limits of no climbing, and occasional balancing, stooping, kneeling, crouching and crawling. [Plaintiff] has the mental residual functional capacity for routine, repetitive tasks, entry level work, working with things rather than people, low stress jobs which do not require [plaintiff] to respond to repeated requests for information from the public or fellow employees, but does not preclude all contact with either group." [AR at 12.]

4

of jobs in the national economy that plaintiff can perform. [AR at 16.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to consider the effects of plaintiff's medications; (2) failed to pose a complete hypothetical question to the vocational expert; and (3) failed to properly evaluate her credibility. Joint Stipulation ("Joint Stip.") at 2. For the following reasons, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

At the hearing, plaintiff testified that she had last used drugs about six months prior to the hearing, and that she was "clean right now." She had been using drugs for about 20 years. [AR at 22.] She has been in and out of prison for the last 15 years. [AR at 23.] She testified that she is presently taking the medications Celexa and Trazodone, given to her by a psychiatrist through her parole office. [AR at 24-25, 103.] Plaintiff indicated that when she does not take her medications she becomes "a nervous wreck." When asked if they produce any side effects, she stated that "[s]ometimes it feels my eyes, you know, like when I look at stuff or maybe I need -- I probably need glasses, but you know it's hard to tell what it says." [AR at 34.] Plaintiff further testified that she sometimes hears voices, the last time being a couple of weeks before the hearing. The voices tell her to use drugs, kill herself, and give up. [AR at 27-28.] The ALJ posed two hypotheticals to the vocational expert, neither of which included any mention of side effects from medications. [AR at 36-37.] As to one of the hypotheticals, the vocational expert testified that there are jobs in the regional and national economies that an individual with the posited limitations could perform.

The record reflects that in January, 2002, plaintiff indicated that she had been doing well on Celexa and Trazodone. [AR at 131.] In April, 2002, she indicated that she benefits from the drug program of Celexa and Trazodone, and that she has a "stable mood" and is "better concentrating" when she is taking those medications. [AR at 122.] In June, 2002, it was determined that she should continue on Trazodone and Celexa. [AR at 115, 116.] Plaintiff denied

any auditory or visual hallucinations in January, 2002, December, 2002, and January, 2003. [AR at 97, 131, 138.][5]

In January, 2003, plaintiff was given a complete psychiatric evaluation by Dr. Reynaldo Abejuela. [AR at 136-41.] She reported being clean from drug use for two years as of that time. [AR at 136.] While she complained of concentration and memory problems, there is no indication that she was having any hallucinations. [AR at 137-38.] Dr. Abejuela indicated that it appeared plaintiff's bipolar symptoms were under control. [AR at 140.] He found no severe restrictions in her daily activities, no severe difficulties in social functioning, no severe impairment in her concentration, persistence and pace, and no repeated emotional deterioration in work-like situations. Plaintiff's ability to understand, carry out and remember instructions, her response to co-workers and supervisors, and her ability to respond appropriately to work situations, were found to be not severely impaired. When she abstains from drug use, there "are no severe limitations due to emotional impairment." [AR at 140.]

After reviewing the evidence in the record, the ALJ concluded that "absent the drug addiction disorder, the evidence supports [that plaintiff] is able to perform substantial gainful activity within the residual functional capacity" described above. [AR at 13-14.] In the absence of substance addiction disorder, her mental impairments result "in mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decomposition." [AR 14.] Turning to Social Security Ruling 96-7p, the ALJ concluded that plaintiff's symptoms in the absence of substance addiction do not preclude the performance of a wide range of substantial gainful activity, as plaintiff indicated to Dr. Abejuela that she could take care of her hygiene and grooming with no assistance, pay bills, handle money, and had fair relations with family, relatives and friends. [AR at 14, 138.] The ALJ further indicated that although plaintiff said she had been

---

[5] The Court notes that there is an indication in the record that plaintiff's Trazodone was increased too much on one occasion, which may have resulted in plaintiff hallucinating. [AR at 127.] This single record, however, is not complete, and the date -- although it appears to be from 2002 -- is not fully legible.

6

hearing voices telling her to use drugs, this is not supported by the evidence in the record. The medications provide her with "at least partial symptomatic relief." [AR at 14.]

**A.     SIDE EFFECTS FROM MEDICATION**

Plaintiff contends that the ALJ erred in not evaluating the side effects of the medications she was taking. Joint Stip. at 3. During the hearing, plaintiff testified that without her medications she is a "nervous wreck," and with them: "[s]ometimes it feels my eyes, you know, like when I look at stuff or maybe I need -- I probably need glasses, but you know it's hard to tell what it says." [AR at 34.]

Plaintiff offered no objective evidence of any side effects from her medications, and the only evidence suggesting that her medications result in vision problems is plaintiff's bare allegation at the hearing, which even she attributed to a need for glasses. Plaintiff now argues that her prescribed medications could have caused these side effects. But absent specific evidence, this is pure speculation. What is more, plaintiff presented no evidence that such vision side effects, even if true, were severe enough to interfere with her ability to work. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work). Indeed, with one exception when she received too much Trazodone, the record contains no evidence whatsoever that plaintiff complained of side effects from her medications. Nowhere is there any indication that she stated that she was experiencing visual side effects, despite the fact that her use of these medications was regularly monitored and reviewed. [AR at 103, 115-16, 122-24, 127, 131-32.] In fact, she told doctors that her medications were beneficial to her. [AR at 122.][6] Furthermore, in light of the ALJ's findings regarding plaintiff's lack of credibility (see infra), there was no reason to include the medication's side effects in the ALJ's determination of plaintiff's RFC. Accordingly, remand is not warranted on this issue, as the

---

[6] Even when her Trazodone was increased too much, there is no notation of any visual side effects on this occasion.

ALJ's analysis of any side effects from plaintiff's medications was appropriate and supported by the record.

**B.    INCOMPLETE HYPOTHETICAL**

Plaintiff next asserts that the ALJ posed an incomplete hypothetical to the vocational expert. Specifically, plaintiff contends that the ALJ did not include in his hypothetical the side effects of plaintiff's medication. Joint Stipulation at 5-6.

While hypothetical questions posed to a vocational expert must set forth all of the limitations and restrictions of a particular claimant (Andrews, 53 F.3d at 1043; Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)), the ALJ is not required to include limitations for which there was no substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is . . . proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."); Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) ("The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record."); Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982) ("An expert's testimony is valuable only to the extent it is supported by medical evidence.").

Plaintiff's assertion that the hypothetical posed to the vocational expert should have included the side effects of her medications is without merit, as the purported condition is not supported by substantial evidence in the record. While plaintiff testified that she suffered from vision problems as a result of her medication, the medical record lends no support for this assertion.  As discussed above, the medical notes indicate no vision problems, and plaintiff has pointed to no such references.  In fact, plaintiff does not cite to a single doctor's report that supports her assertion that she suffers from vision problems or any other side effects as a result of the medications she is taking. Remand is not warranted.

/

/

/

### C. THE ALJ'S DETERMINATION OF PLAINTIFF'S CREDIBILITY

Plaintiff contends that the only specific reference to testimony that the ALJ disputed was her claim that she hears voices, and that the ALJ did not identify which of her testimony was not credible and the evidence undermining plaintiff's complaints. Joint Stip. at 7, AR at 14. This, according to plaintiff, does not amount to a proper credibility finding.

An ALJ can reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, as there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff credibility needed to be clear and convincing. Benton, 331 F.3d at 1040. The Court concludes that the ALJ's rejection was proper, as it was based on reasons that meet the "clear and convincing" standard.

There is substantial support in the record for the ALJ's conclusion concerning plaintiff hearing voices. With the exception of one brief reference to an hallucination caused by her receiving too much medication on one occasion, there is no evidence from any medical source that plaintiff was suffering from hallucinations of any kind. The evidence in fact showed that she did not complain of experiencing any sort of hallucinations. [AR at 97, 131, 138.] This is a sufficient reason to reject her credibility. See Morgan v. Commissioner, 169 F.3d 595, 600 (9th

1 Cir. 1999) (an ALJ can consider discrepancies between the claimant's statements and the
2 objective evidence in the record in making a credibility finding).

3       The ALJ's decision provides more than just that one reason, moreover. He concluded that
4 the record shows that plaintiff has required only minimal routine and conservative treatment for
5 her disabilities, that she could care for herself in the absence of her substance abuse, that the
6 psychiatrist did not report any severe depression or anxiety, and that plaintiff stated she had been
7 clean from drugs for six months at the time of the hearing (in contrast to an earlier statement that
8 she had been clean for two years). [AR at 13, 14.] These are all factors that are supported by the
9 record and validly considered in determining whether an individual is credible. See, e.g., Thomas,
10 278 F.3d at 958-59; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) ("[a]n ALJ is clearly
11 allowed to consider the ability to perform household chores, the lack of side effects from
12 prescribed medications, and the unexplained absence of treatment for excessive pain," as well
13 as the presentation of conflicting information about drug use, in assessing a claimant's credibility.).

14       After fully considering all the evidence regarding plaintiff's testimony, medical record and
15 activities, the Court determines that the ALJ's credibility findings and interpretation of the record
16 were sufficiently clear and convincing. See Reddick, 157 F.3d at 723. Remand is therefore not
17 appropriate. See Morgan, 169 F.3d at 600 ("[w]here, as here, the ALJ made specific findings
18 justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial
19 evidence in the record, [the Court's] role is not to second-guess that decision." citing Fair v.
20 Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

21 /
22 /
23 /
24 /
25 /
26 /
27 /
28 /

## VI.

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 20, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE